# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE WILDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-1979 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| J.C. CHRISTENSEN & ) | |
| ASSOCIATES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant J.C. Christiansen & Associates' motion to dismiss [11]. Also before the Court is Plaintiff Michelle Wilder's motion for leave to file a sur-reply to Defendant's motion to dismiss [20]. Plaintiff's motion to file a sur-reply [20] is granted. For the reasons set forth below, Defendant's motion to dismiss [11] is granted. Plaintiff is given until January 6, 2017, to file an amended complaint.

**I.  Background**

Plaintiff Michelle Wilder was delinquent on her $922.09 credit card debt. In June 2015, Credit One Bank, N.A. ("Credit One"), Plaintiff's original creditor, charged off her account, ceased adding late fees and interest to her account, and stopped sending her periodic statements about her outstanding debt. Shortly thereafter, Credit One sold Plaintiff's debt to LVNV Funding, LLC ("LVNV"), which hired Defendant J.C. Christiansen & Associates—a debt collection agency. On June 11, 2015, Defendant sent Plaintiff a dunning letter indicating that her account was overdue. The letter indicates that the "Total Due" is "$922.09." [1-1, at Ex. C.] The letter also includes the following statement: "Please recognize that interest may be accruing on your account. If applicable, we will receive and apply balance adjustments as interest

accrues." *Id.* According to a consumer credit report, no interest was added to Plaintiff's account between June 2015 and February 2016.

On February 5, 2016, Plaintiff filed her complaint [1], alleging that the two sentences regarding interest in Defendant's dunning letter violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), and the Illinois Collection Agency Act, 225 Ill. Comp. Stat. Ann. 452 ("ICAA"). Specifically, Plaintiff alleges that Defendant was not legally authorized to add interest to Plaintiff's debt because Credit One waived its right to collect interest before assigning the debt to LVNV and there was no other statutory or contractual basis by which LVNV (and thus, Defendant) could add interest. Therefore, according to Plaintiff, this statement in the dunning letter was false, misleading, deceptive, unfair, and unconscionable. Defendant filed a motion to dismiss the complaint in its entirety [11].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to

relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his [or her] claim" and "may be considered by the district court in ruling on the motion to dismiss * * * without converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

### III. Analysis

#### 1. FDCPA Section 1692e Claims

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Sections 1692e, 1692e(2)(a), 1692e(5), and 1692e(10) of the Act prohibit the use of "any false, deceptive, or misleading representation or means in connection with the collection of debt," including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," "[t]he false representation of * * * the character, amount, or legal status of any debt," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Whether a debt collector's communication is false, deceptive, or misleading is evaluated "through an objective standard of the 'unsophisticated consumer.'" *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, 1107 (N.D. Ill. 2014) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004)). This standard assumes that the debtor is "uninformed,

naive, or trusting," but still possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences." *Fields*, 383 F.3d at 564 (internal quotations omitted); see also *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774 (7th Cir. 2007) ("the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived").

Consumers "don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision—in the present context his decision to pay a debt in response to a dunning letter." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009); accord *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 945 (7th Cir. 2011) (citing *Ruth v. Triumph P'ships,* 577 F.3d 790, 800 (7th Cir. 2009)). Similarly, "a false or misleading statement is only actionable under the FDCPA if it is material, meaning that it has 'the ability to influence a *consumer's* decision.'" *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (internal citations omitted); *Hahn v. Triumph P'ships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable").

Plaintiff alleges that the dunning letter's statement regarding interest violates Sections 1692e(2)(a), 1692e(5), and 1692e(10) because Defendant could not legally add interest to Plaintiff's account after Credit One waived that right. Defendant responds that the letter is a "simple truism"—interest "may" be added to the account "if applicable"—and Plaintiff has not

4

alleged facts showing that Credit One waived LVNV's ability to add interest prospectively to Plaintiff's account, meaning that the letter was, in fact, true.

In *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, the Seventh Circuit fashioned a "safe harbor" to allow debt collectors to comply with the FDCPA requirement to state the "amount of the debt," 15 U.S.C. § 1692g(a)(1), when that amount varies because of interest or other charges. 214 F.3d 872, 876 (7th Cir. 2000). That safe harbor reads:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number].

*Id.* The court explained that "[a] debt collector who uses this form will not violate the 'amount of the debt' provision, provided, of course, that the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation)." *Id.*

The Seventh Circuit addressed similar principles for an alleged violation of Section 1692e in *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572 (7th Cir. 2004). In *Taylor*, one dunning letter included the statement, "if applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." *Id.* at 574. The other letter stated, "your account balance may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with your creditor." *Id.* at 575. The Seventh Circuit held that any claim that these statements were "false" in violation of Section 1692e because "two of the creditors did not add interest" was "downright frivolous." *Id.* The court explained that "the letter didn't say they would [add interest], only that they might." *Id.* The letter was not confusing, but was "the clear statement of a truism." *Id.*

5

Plaintiff seeks to distinguish *Miller* and *Taylor* in three ways. First, she argues that "language from [*Miller*] applies to mortgages," whereas in this case "Defendant is not collecting a mortgage, but rather a charged off credit card account." [18, at 3.] That is a distinction without a difference. Both are "debts" under the FDCPA. 15 U.S.C. § 1692a(5); [1 ¶ 8]. Courts apply the *Miller* safe harbor to dunning letters seeking to collect on credit card debts too. *See, e.g.*, *Washington v. Portfolio Recovery Assocs., LLC*, 2016 WL 5477519, at *6–7 (N.D. Ill. Sept. 29, 2016); *Stricklin v. First Nat. Collection Bureau, Inc.*, 2012 WL 1076679, at *8–10 (S.D. Ill. Mar. 30, 2012). Plaintiff does not identify any basis from *Miller*, its progeny, or the FDCPA's text that suggests that the *Miller* safe harbor does not apply to cases involving credit card debts.

Second, Plaintiff argues that *Miller* does not apply because Defendant did not use the exact language from *Miller* and "included its unnecessary interest phrase to imply a right to interest."[1] [18, at 4.] Plaintiff makes a similar effort to distinguish the language from *Taylor*, which Plaintiff notes includes the phrase "as provided in your agreement with your creditor." *Id.* at 5. These efforts are unavailing. *Miller* cautioned that "[o]f course we do not hold that a debt collector *must* use this form of words to avoid violating the statute." 214 F.3d at 876. The *Miller* and *Taylor* provisions also refer to "interest," so Defendant's use of an "interest phrase" is not a material difference. Plaintiff fails to explain how Defendant's language is meaningfully different from *Miller* or why, under her theory, Defendant would not have violated the FDCPA had it used the *Miller* language. But whether or not Defendant's language follows *Miller* perfectly, it is nearly identical to *Taylor*: both provisions express the possibility that interest "may" accrue "if applicable." *Taylor* did not state—or even imply—that explicit reference to a credit agreement was required to avoid Section 1692e liability. Considering the ubiquity of

---

[1] Plaintiff also argues that the letter does "not state an amount 'as of the date of this letter'" [18, at 4], but the letter prominently states, "Total Due: $922.09" [1-1, at Ex. C], and it is undisputed that this was the correct amount due on June 11, 2015.

6

interest charges on delinquent credit card debts, it is hard to see how including a reference to the credit agreement adds anything to Defendant's language (and Plaintiff never says what it adds here). See *Beasley v. Sessoms & Rogers, P.A.*, 2010 WL 1980083, at *5 (E.D.N.C. Mar. 1, 2010) ("Even the 'least sophisticated debtor' understands that a debt may continue to accrue interest."). Defendant's language is equivalent to and falls within the *Miller* safe harbor.

Third, Plaintiff argues that the *Miller* safe harbor applies only to claims under Section 1692g(a)(1) involving the failure to state the "amount of the claim." Plaintiff asserts that she "has not raised a claim under § 1692(g), but rather, all of her claims fall under § 1692e" relating to misrepresentations "in connection with the collection of any debt." [18, at 4]; 15 U.S.C. § 1692e. Plaintiff's complaint, however, *does* raise allegations that Defendant misrepresented the "amount of the debt alleged to be owed" for her pendant ICAA claims [1, ¶ 50] in a manner identical to a Section 1692g claim. For example, Plaintiff argues in her response that "[t]hough Defendant's letter states in the header that the 'Total Due: $922.09,' the statement that interest may be accruing on the account conflicts—Plaintiff, and the unsophisticated consumer, would not know whether interest has increased the balance from the 'Total Due' amount when reading the letter." [18, at 10.] That claim is plainly foreclosed by *Miller* and *Taylor*: a debt collector who uses safe harbor-equivalent language does not misrepresent the amount of the debt owed by indicating that interest may be applied, whether or not interest is in fact applied. *Miller*, 214 F.3d at 876; *Taylor*, 365 F.3d at 575. But even if Plaintiff had not repackaged a Section 1692g claim as an ICAA claim, this argument would still fail. *Miller* would not offer much of a safe harbor if this language (or its equivalent) subjected debt collectors to liability under a different FDCPA provision as "misleading" or "deceptive" on its face. That may be why courts have applied *Miller* to claims under Section 1692e. See *Washington*, 2016 WL 5477519, at *7;

*Tilmon v. LVNV Funding, LLC*, 2014 WL 335234, at *3 (S.D. Ill. Jan. 30, 2014). And regardless of *Miller*'s application, Defendant's language tracks *Taylor*, which squarely rejected a Section 1692e claim. Thus, use of the language from *Miller* or *Taylor* remains instructive for evaluating a Section 1692e claim.

Accordingly, the interest language in Defendant's dunning letter is not—on its face—false, misleading, confusing, or otherwise violative of Section 1692e of the FDCPA. The statement is a truism: interest may or may not be accruing and if it is, Defendant will adjust the balance on Plaintiff's account as it accrues. The language makes no definitive statement about whether interest has accrued or will necessarily be applied to the account in the future. It is a truthful, non-deceptive conditional statement.

But that does not resolve this case. Plaintiff's main allegation is that Defendant's interest statement is latently false because LVNV was bound by Credit One's waiver of its right to collect additional interest and there was no circumstance in which LVNV (and Defendant) could have legally added interest to Plaintiff's account. Thus, Plaintiff's theory is essentially that extrinsic facts render this otherwise truthful statement false, misleading, and deceptive.

This theory finds some support in the case law. Courts have held that "it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Lox*, 689 F.3d at 825. "'When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril.'" *Id.* (quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)). Said differently, literally true conditional language in a dunning letter can be deceptive if the action suggested is legally prohibited. Examples include statements that a court "could

allow" attorney's fees despite the absence of any statutory or contractual right to fees (*Lox*); that an attorney may "review [the] account for possible legal action" where the statute of limitations on any claim had run (*Karr v. Med-1 Sols., LLC*, 2014 WL 1870928, at *5 (S.D. Ind. May 7, 2014)), that the debt collector would share information related to the delinquent account "to the extent permitted by law" where it was legally barred from doing so absent the plaintiff's consent (*Ruth*, 577 F.3d at 799–801), and that a "negative credit report reflecting on your credit record may be submitted to a credit reporting agency" and "if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled" where there was "no circumstance under which [defendant] could legally report an obsolete debt to a credit bureau" (*Gonzales*, 660 F.3d at 1063).[2]

Truisms about potential interest payments are no different; they are not deceptive only "if [Defendant] could actually charge interest on [Plaintiff's] account." *Toction v. Eagle Accounts Grp., Inc.*, 2015 WL 127892, at *3 (S.D. Ind. Jan. 8, 2015); see also *Safdieh v. P & B Capital Grp., LLC*, 2015 WL 2226203, at *5 (D.N.J. May 12, 2015). "[I]f Plaintiff can show that interest or charges could never accrue and therefore the balance owed is truly fixed, then his claim should be allowed to go forward to determine if, under those circumstances, Defendants' letter was threatening or materially misleading." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 F. App'x 764, 768 (6th Cir. 2015).

The stumbling block for Plaintiff is whether she has pled sufficient facts to show that it is plausible that Credit One waived its right to add interest and that this waiver bars LVNV from

---

[2] Plaintiff's response relies heavily on *Gonzalez*, but the Ninth Circuit in that case analyzed whether communications were misleading or threats "under the least sophisticated debtor standard," 660 F.3d at 1063, which is not the standard applied in this Circuit. See *Lox*, 689 F.3d at 822 ("[B]ecause we have rejected the 'least sophisticated consumer' standard, a letter must be confusing to 'a significant fraction of the population.'"). *Lox*'s citation to *Gonzalez* was principally for the point that conditional language may violate the FDCPA when certain conditions legally cannot materialize. *Lox*, 689 F.3d at 824–25.

9

adding interest going forward. "In Illinois, waiver is the voluntary and intentional relinquishment of a known right." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). Because Plaintiff does not allege express waiver, she must allege facts sufficient to plausibly claim that Credit One's waiver can be implied. Waiver "may be implied from the conduct, acts or words of the party who is alleged to have waived a right." *Id.* "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Id.* (citing *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 105 (1991)). To show implied waiver, "the act relied on to constitute the waiver must be clear, unequivocal and decisive." *Id.*

The only factual allegations in the complaint for Credit One's implied waiver are that it "charged off the account in June 2015," "ceased charging interest and late fees to Plaintiff on or about June, 2015," and "ceased sending statements to Plaintiff after June, 2015." [1, ¶¶ 10–12.] "Thus," Plaintiff concludes, "Credit One has waived any right to collect interest." *Id.* ¶ 13.

These sparse allegations fall short. See *Bunce v. Portfolio Recovery Assocs., LLC*, 2014 WL 5849252, at *2–6 (D. Kan. Nov. 12, 2014) (holding that plaintiffs' allegations of implied waiver based on "the facts that (1) the accounts were charged off, and (2) the original lenders stopped sending monthly statements * * * fail to present a plausible basis for inferring any waiver"); *Willingham v. Midland Funding, LLC,* 2014 WL 12600798, at *5 (W.D. Okla. Mar. 11, 2014) (denying motion to amend FDCPA claim because allegations that creditor charged off debt, monthly statements ceased, and creditor stopped charging interest were insufficient to show "implied waiver of its right to accrue additional interest on the unpaid debt"). To start, "[c]harging off the delinquent accounts is a federal regulatory requirement." *Bunce,* 2014 WL

10

5849252, at *2.  Pursuant to the Uniform Retail Credit Classification and Account Management Policy, a financial institution must charge-off a credit card loan that remains delinquent for 180 days.  See 65 Fed. Reg. 36,903-01 (June 12, 2000); [1-1, Ex. D at 10].  Thus, Credit One's charge-off is not evidence of waiver since it is "not a voluntary action of the creditor." *Bunce*, 2014 WL 5849252, at *2.

Likewise, the requirement to send periodic statements is determined by the Truth In Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), and its implementing regulations, 12 C.F.R. § 226 ("Regulation Z").  "While such a cessation [of periodic statements] *may* occur when a lender waives further interest charges, it may also happen if the creditor decides the debt is uncollectible, it has commenced a delinquency action, additional statements are precluded by statute, or if it sells the debt."  *Bunce*, 2014 WL 5849252, at *2; 12 C.F.R. § 226.5(b)(2)(i); *Terech v. First Resolution Mgmt.*, 854 F. Supp. 2d 537, 542–43 (N.D. Ill. 2012) (concluding that even under a prior version of Regulation Z, which "did not permit a creditor to automatically stop sending statements after charge-off," the absence of periodic statements "add[s] nothing to the inquiry" into whether a creditor waived the right to add interest).  Here, Credit One's obligation to send periodic statements ended once it "ceased collection efforts"—that is, when it assigned Plaintiff's debt to LVNV between the "June, 2015" charge-off and the June 11, 2015 dunning letter.  [1, ¶¶ 10, 15]; 12 C.F.R. § Pt. 226, Supp. I ¶ 5(2)(b)(i)(3); *Bunce*, 2014 WL 5849252, at *2 (explaining that a creditor's "obligation to send statements ends after the sale of the account"); see also *Neff v. Capital Acquisitions & Mgmt. Co.,* 352 F.3d 1118, 1121 (7th Cir. 2003) (holding that credit card debt assignees have no obligation to send periodic statements).  Thus, "simply because the original creditors charged off the accounts and stopped sending month

statements does not preclude the assignee of the accounts from seeking to collect interest." *Bunce*, 2014 WL 5849252, at *3.

Accordingly, Plaintiff's only factual allegations in support of a waiver claim are that Credit One (1) charged-off her account, as it was legally required to do; (2) did not send any further periodic statements after June 1, as it was legally permitted to do once it ceased collection efforts; and (3) did not add any interest in the ten days between charge-off and the dunning letter. None of these facts, standing alone or together, plausibly suggests that Credit One waived even its own ability to add interest, much less the rights of all assignees to add interest prospectively. The fact that Plaintiff's credit report shows LVNV did not add interest *after* it purchased Plaintiff's account suggests nothing about whether Credit One took any "clear, unequivocal and decisive" act that constitutes waiver *before* the assignment.[3] *Delta Consulting*, 554 F.3d at 1140. Plaintiff also argues that it is "likely that the Asset Purchase Agreement, by which Defendant purchased [Plaintiff's] account likely set forth that Defendant had no right to charge interest on the accounts." [18, at 8.] But speculation is not a substitute for factual allegations.[4] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Plaintiff's complaint never moves beyond possibility.

The cases relied on by Plaintiff that allowed FDCPA claims based on implied waiver theories to survive a motion to dismiss differ in two critical respects. First, the length of time that the allegedly waiving original creditor did not add interest or send periodic statements was

---

[3] Plaintiff further states that Defendant "threatened to charge interest when it had no intention of charging interest, evidenced by the fact that the balance on the alleged debt remained unchanged since the date of charge-off by Credit One." [18, at 10.] The fact that interest was not added does not state a Section 1692e violation. *Taylor*, 365 F.3d at 575 ("The letter didn't say they would, only that they might.").

[4] Regardless, LVNV, not Defendant, acquired Plaintiff's account from Credit One. Defendant does assert a right to "charge interest," only to "receive and apply" interest that may be imposed by LVNV.

significantly longer than the ten-day period here. See *Simkus v. Cavalry Portfolio Servs., LLC*, 2012 WL 1866542, at *4–5 (N.D. Ill. May 22, 2012) (denying motion to dismiss where prior creditors did not collect interest or send further billing statements for over two years after charge-off); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 518 (E.D. Mich. 2013) (finding implied waiver, in part, because original creditor had not added interest for the twenty-six months after charge-off, at which point the debt was sold to defendant); *Terech*, 854 F. Supp. 2d at 539 (denying motion to dismiss where original creditor did not charge interest or send periodic statements for five months and "reversed a number of accrued fees, including some late fees and interest" at charge-off, then the intermediate buyer did not charge interest or send statements for two-and-a-half years, and plaintiff offered other "detailed allegations" about standard banking practices concerning interest); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 445 (6th Cir. 2014) (reversing dismissal of FDCPA claim where Defendant "concedes that [the prior creditor] waived its right to collect interest at the contractually agreed upon rate"; prior debtor had stopped charging interest and sending periodic account statements for "a little more than a year" after charge-off, at which point it assigned its ownership to defendant).

Second, in each case, the defendant-creditor tried to impose retroactively the interest that the original creditor had allegedly waived.[5] See *Simkus*, 2012 WL 1866542, at *2 (alleging defendant "retroactively added interest for the period of time between the charge-off by [prior creditor] and [defendant's] purchase of the account" in violation of the FDCPA); *McDonald*, 296 F.R.D. at 526 ("Because [prior creditors] waived the interest, [Defendant] could not retroactively impose interest for the period in which it did not own the accounts."); *Terech*, 854 F. Supp. 2d at 540 ("Count I alleges that the retroactive addition of interest violated the [FDCPA]"); *Stratton*,

---

[5] Plaintiff appears to acknowledge that these cases all involve "[w]hen a debtor collector tries to collect interest that a previous collector had waived" [18, at 3], which is not what Defendant did here.

770 F.3d at 446 (assignee-defendant "alleged that [debtor] owed interest during the 10 months after [original creditor] charged off her debt and before [original creditor] sold that debt to [defendant]"). None of these cases held that subsequent creditors were precluded from charging interest prospectively. Plaintiff offers no other authority to substantiate this proposition, which is the legal lynchpin on which her complaint depends. Thus, Plaintiff fails to offer any factual or legal support to show the plausibility of her contention that Credit One waived its successor-in-interest's right to add interest to Plaintiff's unpaid balance going forward.

If that were not enough, Defendant argues that LVNV could have added interest pursuant to Illinois' prejudgment interest statute, 815 Ill. Comp. Stat. Ann. 205/2, regardless of any alleged contractual waiver by Credit One. See *Haney v. Portfolio Recovery Associates, L.L.C.*, 837 F.3d 918, 928 (8th Cir. 2016) ("Nothing inherent in the process of charging off a debt precludes a claim for statutory interest"); *Grochowski v. Daniel N. Gordon, P.C.*, 2014 WL 1516586, at *3 n.2 (W.D. Wash. Apr. 17, 2014) ("Contrary to plaintiff's assertion, Capital One's decision to forego the contractual rate of interest did not relinquish its right to seek prejudgment interest at the statutory rate."); but see *Stratton*, 770 F.3d at 447–48. Plaintiff's only response to this argument is that "Defendant did not comply with the [prejudgment interest statute's] notice provisions." [18, at 2]; 815 Ill. Comp. Stat. Ann. 205/2 (requiring 30 days' written notice before interest may be imposed). That is a non sequitur. Whether or not the dunning letter served as notice—and there are at least circumstances where a request for interest may be implied, see *Gonzalez v. Second Fed. Sav. & Loan Ass'n*, 954 N.E.2d 245, 256, 2011 IL App (1st) 102297, ¶ 58—Plaintiff implicitly concedes that Defendant could have served notice and then would have been able to collect interest. That means it *was* legally possible for LVNV to add interest to Plaintiff's account prospectively (assuming it complied with the notice requirement), which

14

dooms her claims that Defendant "had no legal * * * right to impose charge interest." [18, at 6 (capitalization altered).] Thus, Plaintiff's Section 1962e claims must be dismissed.

### 2. FDCPA Section 1692f Claims

Section 1692f of the FDCPA prohibits "[a] debt collector [from] us[ing] unfair or unconscionable means to collect or attempt to collect any debt." Plaintiff argues that Defendant used "unfair and unconscionable means" in violation Section 1692f "when [it] threatened to collect interest" and "made this false threat in an attempt to coerce Plaintiff into paying the balance in full on the alleged debt." [1, ¶¶ 31, 34.] Defendant responds by arguing that the interest statement in the dunning letter was a "legal truism" that would not be understood to be a threat by an unsophisticated consumer. [11, at 7.]

Although the complaint does not specifically reference Section 1692f(1), Plaintiff's response block quotes this subsection as supplying the means by which Defendant's dunning letter was "unfair" and "unconscionable." [See 18, at 6.] Section 1692f(1) precludes "collection of any amount (including any interest * * *) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Courts have held that Section 1692f(1) is "directed at debt collectors who charge fees not contemplated by the original agreement, not debt collectors who seek to charge fees contemplated by the agreement but arguably waived thereafter." *Terech*, 854 F. Supp. 2d at 544. As a result, Plaintiff's allegation that Defendant engaged in "unfair" or "unconscionable" conduct by claiming that interest "may" be added to Plaintiff's account is not a violation of Section 1692f(1) even if she could demonstrate that Credit One waived its contractual right. See *Simkus*, 12 F. Supp. 3d at 1110 ("[E]ven if BOA waived its right to collect interest, Defendants cannot have violated 1692f(1) if the original agreement between [plaintiff] and BOA allowed for charging interest on late payments."). And,

other than Credit One's alleged waiver, the complaint does not allege anything "unfair" or "unconscionable" about the dunning letter, which is true on its face and protected by *Miller*.[6] *Washington*, 2016 WL 5477519, at *7. Plaintiff's Section 1692f claim cannot survive either.

   3.   **ICAA Claims**

Plaintiff alleges that Defendant violated two provisions of ICAA. First, she alleges that Defendant "attempt[ed] to collect interest or other charge or fee in excess of the actual debt" that was not "expressly authorized by the agreement creating the debt" or "expressly authorized by law." [1, ¶ 49]; 225 Ill. Comp. Stat. Ann. 425/9(a)(33). Second, she alleges that Defendant misrepresented "the amount of the debt alleged to be owed." [1, ¶ 50]; 225 Ill. Comp. Stat. Ann. 425/9(a)(30). Plaintiff concedes that her ICAA "logically flow from [her] claims under the FDCPA" [18, at 10], and does not argue that her ICAA claims can survive if her FDCPA claims are dismissed. Because her FDCPA claims fail, so too must her ICAA claims.

Plaintiff's ICAA claims also must be dismissed for independent reasons. "To state a personal claim under the ICAA, a Plaintiff must show actual damages." *Stubbs v. Cavalry SPV I, LLC*, 2015 WL 135131, at *5 (N.D. Ill. Jan. 8, 2015). "Attorneys' fees are not considered actual damages under the ICAA." *Id.*; accord *Herkert v. MRC Receivables Corp.,* 655 F. Supp. 2d 870, 881 (N.D. Ill. 2009) (collecting cases). Plaintiff asserts an entitlement to an award of "actual damages" for her FDCPA claim and "compensatory and punitive damages" for her ICAA

---

[6] Plaintiff's response advances the claim that Defendant violated Section 1691f(1) because it "has no information about the terms of the agreement between the underlying creditor and the consumer's obligation to pay interest." [18, at 6.] That conclusory allegation is absent from the complaint. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). Plaintiff analogizes this case to a bankruptcy adversary proceeding from Massachusetts in which the court found a plausible Section 1691f(1) violation where the defendant "repeatedly fabricated the amount of the consumer's obligation 'out of thin air.'" [18, at 6–7 (quoting *In re Maxwell*, 281 B.R. 101, 117 (Bankr. D. Mass. 2002)). The conduct in *Maxwell* bears no resemblance to Defendant's actions here, most notably because Defendant never "assessed interest" on Plaintiff's debt. *Id.* at 6; [1, ¶ 22].

claim, but does not provide notice—even generally—as to what her "actual damages" might be. After all, Plaintiff alleges that no interest was added to the account [1, ¶ 22], and her full balance remained outstanding at the time she filed the complaint [1-1, at Ex. D at 10]. Unless Plaintiff can plead actual damages, her ICAA claims cannot advance.

In addition, Plaintiff's ICAA claims fail as a matter of law. Plaintiff pled that Defendant "did not intend to charge Plaintiff interest on the alleged debt" and never in fact added interest. [1, ¶¶ 22, 32.] The dunning letter states that $922.09 was due. [1-1, at Ex. C.] Plaintiff does not argue that this amount was inaccurate or that Defendant tried to collect funds from Plaintiff in excess of this amount. Thus, Plaintiff has failed to show how Defendant "attempt[ed] to collect interest * * * in excess of the actual debt" in violation of Section 9(a)(33). Moreover, as noted above, Plaintiff does not offer any reason that her Section 9(a)(30) claim regarding misrepresentations of the "amount of the debt" should not suffer the same fate as if her claim had been brought under 15 U.S.C. § 1692g(a)(1). *Miller*, 214 F.3d at 876 ("[a] debt collector who uses this form will not violate the 'amount of the debt' provision"). Accordingly, Plaintiff's ICAA claims must be dismissed.

**IV. Conclusion**

For the foregoing reasons, the Court grants Plaintiff's motion to file a sur-reply [20] and Defendant's motion to dismiss [10]. Plaintiff is given until January 6, 2017, to file an amended complaint if she believes that she can cure the deficiencies set out above.

Dated: December 6, 2016

_____
Robert M. Dow, Jr.
United States District Judge